# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NICOLE BARNES, | |
| Plaintiff, | Case No. 14-cv-3116 |
| v. | |
| NORTHWEST REPOSSESSION, LLC, AUSTIN CAR CREDIT, INC., and BOB SOLTANI, | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

In July 2012, Plaintiff Nicole Barnes bought a car from Defendant Austin Car Credit, Inc. (ACC). In April 2013, Defendant Northwest Repossession repossessed the car at ACC's request. Plaintiff, alleging that Northwest illegally repossessed the car, sued under federal and state consumer protection statutes in April 2014. In March 2016, Northwest moved for summary judgment on all counts and Plaintiff cross-moved for partial summary judgment on the issue of liability as to one count. [90]; [94]. Northwest's motion was granted in part and denied in part, while Plaintiff's motion was granted. [152].

In May 2017, Northwest moved for summary judgment for the second time, alleging that it discovered new information about Plaintiff's conduct in her bankruptcy proceedings, and in this case, that deprived Plaintiff of standing to pursue her claims or required that she be judicially estopped from pursuing her claims. [181]. In response, Plaintiff moved to strike Northwest's motion for

summary judgment. [188]. Both parties also moved for sanctions in the alternative. *Id.*; [181].

This Court incorporates by reference, and presumes familiarity with, its prior opinion resolving the cross-motions for summary judgment, [152], and therefore limits the factual background here to new information about the bankruptcy proceedings. For the reasons discussed below, this Court grants Northwest's motion for summary judgment and denies Plaintiff's motion to strike.

I.   **Background**

The following facts come from Northwest's Statement of Undisputed Material Facts, [183], and from judicially noticeable information about Plaintiff's bankruptcy proceedings, *In re Consol. Indus. Corp.*, 397 F.3d 524, 527 (7th Cir. 2005). In July 2012, Plaintiff bought a car from ACC. [183] ¶ 5. Eight days later, Plaintiff filed a voluntary bankruptcy petition under Chapter 13 of the United States Bankruptcy Code (First Petition). *Id.* ¶ 6. Under penalty of perjury, Plaintiff declared that she had no contingent or unliquidated claims. *Id.* ¶¶ 7–8. The bankruptcy court confirmed Plaintiff's Chapter 13 repayment plan in October 2012. [183-5] at 1. In April 2013, Northwest repossessed the car, creating the claims at issue in this case. [183] ¶ 9. Plaintiff did not amend her bankruptcy filings to include her claims against Northwest in the time between when Northwest repossessed the car and when the bankruptcy court dismissed the First Petition in March 2014. *Id.* ¶ 10.

In February 2015, Plaintiff issued a settlement demand to Northwest for $34,550, plus Uniform Commercial Code (UCC) statutory damages, costs, and

attorneys' fees. [183] ¶ 11. In March 2015, while this case was active, Plaintiff filed a second voluntary petition for Chapter 13 bankruptcy (Second Petition). *Id.* ¶ 12. Under penalty of perjury, Plaintiff declared in the Second Petition that she had no contingent or unliquidated claims. *Id.* ¶ 13.

Northwest deposed Plaintiff in July 2015; when asked whether she had filed for bankruptcy, Plaintiff testified only that she filed for bankruptcy in 2012. *Id.* ¶¶ 16–17, 19. Plaintiff said the 2012 bankruptcy proceeding was "discharged," which she later clarified to "dismissed," just before Thanksgiving in 2012. *Id.* ¶ 18. As noted above, however, the First Petition was actually dismissed in March 2014. Plaintiff denied filing for bankruptcy at any other time, even though she filed her Second Petition only a few months before the deposition. *Id.* ¶ 20. Plaintiff also chose not to amend her bankruptcy filings to include her active claims against Northwest before the bankruptcy court dismissed the Second Petition in August 2015. *Id.* ¶ 21.

Two months after Northwest filed its current summary judgment motion, Plaintiff moved to reopen the dismissed Second Petition to amend her schedules, alleging that she inadvertently left off her claims from this case. [192-1]. Plaintiff filed amended schedules in August 2017, listing the "potential claim" against Northwest as an asset with an "unknown" value. [192-3] at 5, 9. Northwest, however, made two specific settlement offers to Plaintiff earlier in this litigation: one for $7,500 in May 2015, and one for $25,000 in November 2015. [183] ¶¶ 15, 22.

3

The bankruptcy court dismissed the reopened proceeding within a week of Plaintiff filing her amended schedules. [195] at 3.

II. **Legal Standard**

Summary judgment is appropriate if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to a material fact exists when, based upon the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must evaluate evidence in the light most favorable to the non-moving party. *Id.* at 255. To show that a genuine dispute exists as to a material fact, the non-moving party must "support its assertion with particular materials in the record" and cannot simply rely upon the pleadings or speculation. *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014).

III. **Analysis**

Northwest argues that Plaintiff lacks standing to pursue the claims in this case because they remain the property of the bankruptcy estate. Alternately, Northwest argues that this Court must judicially estop Plaintiff from pursuing the claims because she perjured herself during her deposition and only disclosed her current claims in her bankruptcy proceedings when Northwest informed this Court of her omissions. The Court addresses standing first. Standing is a threshold issue; without it, Plaintiff would be "an interloper, trying to prosecute a claim that belongs

4

to [her] estate in bankruptcy." *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006).

A.  Standing

Filing a Chapter 13 bankruptcy petition creates a bankruptcy estate. 11 U.S.C. § 541(a). The bankruptcy estate includes "all legal or equitable interests of the debtor in property" at the start of the case, *id.*, as well as property that the debtor acquires after the case commences, but before the case is closed, dismissed, or converted to a different type of bankruptcy. 11 U.S.C. § 1306(a)(1). Plaintiff suggests that a Chapter 13 debtor always retains possession of the property in the bankruptcy estate. That suggestion fails to recognize the effect of a court confirming a bankruptcy plan:

> Prior to the plan's confirmation, § 1306(a) deems post-filing property as property of the estate. At the time of confirmation, § 1327(b) vests, or transfers, the property of the estate *at that time* in the debtor. *After* confirmation, § 1306(a) once again operates to deem property acquired by the debtor . . . as property of the estate.

*In re Fisher*, 203 B.R. 958, 964 (N.D. Ill. 1997) (emphasis added). Plaintiff is correct that confirming a bankruptcy plan vests all then-existing property in the debtor. *Id.* But any property acquired *after* confirmation vests in the estate. *Id.* at 962.

Here, Plaintiff's claims against Northwest were part of her bankruptcy estates even though she did not originally schedule the claims. *See, e.g.*, *Biesek*, 440 F.3d at 413 (stating that an unscheduled legal claim belonged to the plaintiff-appellant's bankruptcy estate). The bankruptcy court confirmed Plaintiff's plan for the First Petition in October 2012, [183-5], and she acquired her claims in this case

5

when Northwest repossessed the car in April 2013. [183] ¶ 9. Thus, for the First Petition, the claims against Northwest were post-confirmation property that became property of the bankruptcy estate under § 1306(a).

Plaintiff filed the Second Petition in March 2015, almost a year after Northwest repossessed the car. [183] ¶ 12. As such, Plaintiff's claims against Northwest were in her possession at the start of the case, and were swept into the bankruptcy estate under § 541(a). The bankruptcy court never confirmed Plaintiff's plan for the Second Petition, [183-9], so the bankruptcy estate's property could not have vested in Plaintiff through confirmation.

Plaintiff argues, relying upon 11 U.S.C. § 349(b)(3), that her unscheduled claims reverted to her when the bankruptcy court dismissed her Second Petition. § 349(b)(3) provides: "a dismissal of a case . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case." Northwest responds that 11 U.S.C. § 554(d) defeats the usual effect of a dismissal for unscheduled assets. § 554(d) provides: "property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."

The Seventh Circuit has not yet addressed the precise interaction between the two provisions, but this Court finds guidance in a recent Second Circuit decision. In *Crawford v. Franklin Credit Management*, the Second Circuit held that § 554 does not apply after a dismissal, because a dismissal "undoes the bankruptcy case" such that there is "no longer any bankruptcy estate" and "no longer any

property of the estate." 758 F.3d 473, 485 (2d Cir. 2014) (citing *SEC v. Great White Marine & Recreation, Inc.*, 428 F.3d 553, 556 (5th Cir. 2005)). Thus, even unscheduled assets revert to the debtor after a dismissal if the debtor was "the entity in which such property was vested" immediately before the bankruptcy case started. § 349(b)(3). This reversion happens because § 349—like § 541(a), which sweeps assets into a bankruptcy estate—makes no distinction between scheduled and unscheduled assets. *Id.* at 484; *see also Wilbern v. Culver Franchising Sys., Inc.*, No. 13-cv-3269, 2015 WL 5722825, at *28 (N.D. Ill. Sept. 29, 2015) (following *Crawford*).

As applied to this case, *Crawford* means that Plaintiff's claims against Northwest reverted to her upon the dismissal of each bankruptcy case. To be sure, Plaintiff did not own the claims against Northwest when she filed her First Petition; Northwest had not yet repossessed her car. But § 349's goal "is to undo the bankruptcy case, as far as practicable." *Crawford*, 758 F.3d at 485 (citation omitted). No one else owned Plaintiff's claims against Northwest, and no bankruptcy estate existed upon dismissal of the First Petition, so the claims reverted to Plaintiff. When Plaintiff filed her Second Petition, she owned the claims against Northwest (which were active in this Court), so those claims reverted to Plaintiff upon dismissal of the Second Petition. In short, Plaintiff has standing.

7

## B. Judicial Estoppel

Even though Plaintiff has standing to pursue her claims against Northwest, she is judicially estopped from pursuing those claims on her own behalf because of her repeated dishonesty before the bankruptcy court and this Court.

Three factors govern when to apply judicial estoppel: (1) the party's later position must be "clearly inconsistent" with her earlier position; (2) the party must have persuaded a court to accept the earlier position, so that another court accepting the inconsistent position in a later case would "create the perception that either the first or the second court was misled"; and (3) the party asserting the inconsistent position would gain an unfair advantage if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (citations and internal quotation marks omitted). Even if a debtor's petition is later dismissed, confirmation of a debtor's Chapter 13 plan qualifies as acceptance for the purposes of judicial estoppel, as does the automatic stay against creditors that arises from filing a Chapter 13 petition. *See Williams v. Hainje*, 375 F. App'x 625, 627–28 (7th Cir. 2010) (collecting cases explaining that "a debtor who receives even preliminary benefits from concealing a chose in action from [her] creditors can still be estopped from pursuing the suit in the future").

First, Plaintiff's position in this case is "clearly inconsistent" with her position in both bankruptcy proceedings that she had no contingent or unliquidated claims. Second, "acceptance" for the purposes of judicial estoppel occurred in both bankruptcy proceedings, such that this Court allowing Plaintiff's claims to go

forward would "create the perception" that the bankruptcy court was "misled." In the 2012 proceeding, the bankruptcy court confirmed Plaintiff's plan; in the 2015 proceeding, Plaintiff received the "significant financial benefits" of the automatic stay against creditors under 11 U.S.C. § 362. *Williams*, 375 F. App'x at 627.

Lastly, Plaintiff would gain an unfair advantage if not estopped by this Court. By denying that she owned any contingent or unliquidated claims, Plaintiff hid valuable assets from her creditors. Assuming that she made her settlement demand—for $34,550, plus UCC statutory damages, costs, and attorneys' fees—in good faith, Plaintiff's claims against Northwest were "the most valuable assets in her possession, by several orders of magnitude." [182] at 3. It would be a "perversion of the judicial process" to let Plaintiff "conceal, for her personal benefit, an asset that by her reckoning" significantly exceeds her debts. *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). In her 2015 bankruptcy proceeding, for example, Plaintiff proposed that she would make payments totaling just $7,200. [183] ¶ 14.

Plaintiff cannot escape the impact of her previous decision to conceal her assets by simply amending her schedules now in response to a summary judgment motion. Plaintiff only disclosed her claims to the bankruptcy court *after* her adversary exposed her. As another court in this district explained: "Allowing Plaintiff to back up, re-open the bankruptcy case, and amend [her] bankruptcy filings, only after [her] omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if [she] is caught concealing

9

them.  This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure." *Esparza v. Costco Wholesale Corp.*, No. 10-cv-5406, 2011 WL 6820022, at *4 (N.D. Ill. Dec. 28, 2011) (citation omitted).  This Court is unwilling to give Plaintiff an "escape hatch" that "would only encourage debtors to conceal assets." *Viette v. Hospitality Staffing Inc.*, No. 12-cv-2327, 2013 WL 2450101, at *4 (N.D. Ill. June 5, 2013).

Plaintiff pleads ignorance and says her omissions were the result of "a layperson's misunderstanding of bankruptcy procedure." [188] at 11.  This argument is unavailing—Plaintiff enjoyed the assistance and guidance of a bankruptcy lawyer in those proceedings.  *See, e.g.*, [192] at 1.

Plaintiff also argues that she is entitled to an evidentiary hearing to determine whether her "alleged misrepresentations" were deliberate. [188] at 11. Under the due process clause, "an evidentiary hearing is required only if there are material factual disputes." *Wozniak v. Conry*, 236 F.3d 888, 890 (7th Cir. 2001).  To show that a genuine dispute exists as to a material fact, the non-moving party must "support its assertion with particular materials in the record" instead of relying upon the pleadings or speculation.  *Olendzki*, 765 F.3d at 746.  Here, no evidence in the record supports a reasonable inference that Plaintiff's omissions were inadvertent.  Plaintiff did not file an affidavit to support her assertion that the omissions were accidental, although she had several months to do so between when Northwest filed its second summary judgment motion and when the parties completed briefing.  Thus, Plaintiff has not shown that a genuine dispute exists as

10

to a material fact, and she is not entitled to an evidentiary hearing at this point in the proceedings.[1]

Going far beyond a single accidental omission, the record here demonstrates a pattern of concealment by Plaintiff. She failed to disclose her claims against Northwest in two separate bankruptcy proceedings, and she gave false testimony during her deposition by denying that she filed for bankruptcy a second time. It strains credulity to assert that Plaintiff could continually forget about legal claims that were by far her most valuable asset, and that she was actively litigating when she filed for bankruptcy the second time. Plaintiff is barred by judicial estoppel from pursuing the claims against Northwest on her own behalf.

The Court notes that judicial estoppel does not apply to Plaintiff's creditors: "Judicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor's deceit." *Cannon-Stokes*, 453 F.3d at 448. The bankruptcy estate itself never engaged in "contradictory litigation tactics," so judicial estoppel does not affect the estate. *Id.*

### C. Sanctions

Without any evidentiary support, Plaintiff speculates that Northwest "had to have been aware of Plaintiff's alleged 'misrepresentations' regarding her bankruptcy filings and the course of her two bankruptcy proceedings at the time it

---

[1] Indeed, if Plaintiff had actually made "an honest attempt to pay her debts," *Cannon-Stokes*, 453 F.3d at 448, she would have moved to reopen the bankruptcy for more than "the limited purpose of amending schedules." [192-1] at 4. Instead, Plaintiff did not submit any plan to repay her creditors, and the reopened proceeding closed six days after she filed her amended schedules, meaning there is no active bankruptcy proceeding that could benefit creditors. [195] at 3. And even then, Plaintiff's amended schedules were *still* not entirely forthright with the bankruptcy court. She listed only a "potential claim" against Northwest with an "unknown" value, instead of identifying this ongoing case in which she received multiple settlement offers. [192-3] at 5, 9.

filed its *first* motion for summary judgment. Not to have been aware of them after Plaintiff's deposition is to court malpractice." [188] at 2 (emphasis added). But surely, if Northwest "had to have been aware" of Plaintiff's misrepresentations, then Plaintiff's counsel also "had to have been aware" that Plaintiff concealed her claims from the bankruptcy court and gave false testimony in her deposition. Yet Plaintiff's counsel provided no explanation for why they allowed their client to mislead this Court since at least March 2016. As Northwest said, "The assertion that Northwest should be blamed for not discovering that Plaintiff perjured herself *sooner* is strikingly bold and utterly offensive to the judicial system." [189] at 13 (noting that "Plaintiff's counsel do not suggest, though, that [they] believed [their] client's testimony to be false and investigated it [themselves] as Northwest was purportedly obligated to do."). Based upon the record, this Court denies the alternative requests of both parties for sanctions.

## IV. Conclusion

In light of the above, this Court grants Northwest's motion for summary judgment [181] with prejudice, and denies Plaintiff's motion to strike [188] as moot. The Court does not grant sanctions against either party. Civil case terminated.

Date: October 4, 2017

Entered:

John Robert Blakey
United States District Judge

12